106 So.2d 215 (1958)
PARK LAKE PRESBYTERIAN CHURCH, Appellant,
v.
ESTATE OF Albert A. HENRY, Mary Elizabeth Larrabee, and Mary Louise Roberts, Appellees.
No. 197.
District Court of Appeal of Florida. Second District.
November 5, 1958.
*217 Akerman, Dial & Akerman, Orlando, for appellant.
Felder & Bettinghaus, Winter Park, for appellees.
KANNER, Chief Judge.
Construction of the will of Albert A. Henry, now deceased, is here sought with reference to certain bequests of stock as set forth in Items VI, VII, VIII, IX, X, and XII of his last will and testament, the object of this appeal being determination of whether these items represent general or demonstrative bequests. The judgment of the probate court from which this appeal is taken is that they are demonstrative and that these items should abate after the general legacies. Appellant is Park Lake Presbyterian Church of Orlando, Florida, which, under Item IV, as a general legatee, was bequeathed the sum of $10,000. At the time of testator's death, he possessed the shares of corporate stock in amounts equal to or more than those bequeathed.
The subject bequests are all of corporate stock, such as Gulf Oil Corporation stock, Sears Roebuck and Company stock, The Pennsylvania Railroad Company stock; and the context of the items enunciating these bequests is identical except for the names of the respective beneficiaries, the designations of the stock, and the number of shares bequeathed to each of the beneficiaries.
The four principal classifications under which legacies may be grouped are specific, general, demonstrative, and residuary. This court is concerned only with the general and demonstrative classifications. The parties on both sides of this appeal agree that the legacies come under neither of the other two classifications. By way of definition, however, in order to clarify the respective characteristics of each classification and thus to place focus more definitively upon the general and demonstrative types, it may be pointed out that a specific legacy is a gift of a particular thing or of a specified part of the testator's estate so described as to be capable of distinguishment from all others of the same kind. 96 C.J.S. Wills § 1125(d), p. 878; 57 Am.Jur., Wills, section 1401, p. 935; and Page on Wills, Volume 4, section 1394, p. 112. A residuary legacy is a general legacy wherein fall all the assets of the estate after all other legacies have been satisfied and all charges, debts, and costs have been paid. Redfearn, Wills and Administration of Estates in Florida, 3rd Edition, Volume 1, Ch. 12, section 146, p. 233; and 57 Am.Jur. Wills, section 1415, pp. 946-947.
Fundamentally, a court's interpretation of any integral part of a will must be based upon the total will and construed solely in the light of the testator's intent gathered from the complete testament. A court may not by conjecture or surmise, in construing certain bequests, redraft or alter the will of a testator but must be governed in its interpretation by the language of the instrument as a whole.
However, determination of the problem under consideration requires a scrutiny of the characteristics constituting a general legacy and a demonstrative legacy.
A general legacy is one which may be satisfied out of the general assets of the testator's estate instead of from any specific fund, thing, or things. It does not consist of a gift of a particular thing or fund or part of the estate distinguished and set apart from others of its kind and subject to precise identification. A general legacy has a prerequisite of designation by quantity or amount. The gift may be either of money or other personal property. 57 Am.Jur. Wills § 1402, p. 936; and 96 C.J.S. Wills § 1125(e), pp. 881-882. See *218 also Volume 18 Words & Phrases, General Legacy, pp. 394-410. A bequest of a certain number of shares of stock, bonds, and the like, described by the corporation, obligor, and the like, or by value or quantity, but not indicating any specific lot of such securities, is a general legacy in the absence of contrary testatorial intention. Page on Wills, Volume 4, ch. 37, section 1397, p. 122; and 96 C.J.S. Wills § 1129 (b), pp. 895-898.
A demonstrative legacy is a bequest of a certain sum of money, stock, or other property payable out of a particular fund, property, or security; but it cannot constitute a gift of the corpus, nor can it show a purpose of releasing the general estate from liability in the event the particular fund, property, or security should fail. Two essential components of a demonstrative legacy are that it be an unconditional gift in the nature of a general legacy and that it indicate the fund out of which the legacy is to be satisfied. 96 C.J.S. Wills § 1125(e, f), pp. 882-884; 57 Am.Jur. Wills § 1403, p. 937; Redfearn, Wills and Administration of Estates in Florida, 3rd Edition, Volume 1, Ch. 12, section 146, p. 232; Page on Wills, Volume 4, sections 1398 and 1399, pp. 128-133; and Volume 12 Words & Phrases, Demonstrative Legacy, pp. 55-70.
A typical example of a demonstrative legacy is a pecuniary bequest of a specified sum to be paid out of particular securities owned by the testator, as in a gift of $1,000 to be paid out of a specified corporate stock. 57 Am.Jur. Wills section 1403, pp. 937-938. A typical example of a general legacy may be seen in the ordinary pecuniary bequest of specified sums of money and in a bequest of securities by quantity. 57 Am.Jur. Wills § 1402, pp. 936, 937.
We emphasize that it is generally recognized that a demonstrative legacy is distinguished from a general legacy by a clear and unmistakable line of demarcation which sets apart a demonstrative legacy as one which is dependent upon a particular fund or a particular property for payment or discharge, and which cannot amount to a gift of the corpus. Annotation, 73 A.L.R. 1252; and 57 Am.Jur. Wills section 1403, pp. 937-938.
With these definitions and characteristics in mind, it is well to consider the context of the subject bequests as these principles may apply, evaluating and analyzing the same as they may bear upon the instant case. The bequests under consideration here were all of corporate stock and all were worded in the following manner:
"I hereby give and bequeath to (legatee's name) (number) shares of (name of stock) stock. In the event said stock has been sold, then, I hereby give and bequeath to (legatee's name) an amount of cash equal to the value, at the time of my death, of said stock."
In the Florida case, In re McDougald's Estate, 1942, 149 Fla. 468, 6 So.2d 274, it was held by the Supreme Court that a legacy was general where the testator bequeathed designated shares of corporate stock. In that case the Supreme Court said:
"A general bequest is one not segregated or withdrawn from the estate under the terms of the will but is to be paid in money or property as the latter directs * * *."
It may be noted that the language of the bequest in the McDougald case is strikingly similar to that in the instant case except for the alternative feature:
"`I give to my stepdaughter Mabel E. Chase of Tampa, Florida, 15 shares of stock in Goodall Worsted Company; also 15 shares of stock in Goodall Securities Company; and also 5 shares of Preferred Stock in Tampa Gas Company.'"
It may be also noted that the two cases which follow, although not parallel factually to the present case, interestingly fit in *219 with the other authorities utilized toward solution of the problem.
An alternative feature may be observed in the case of In re Beecroft's Estate, 1933, 146 Misc. 344, 263 N.Y.S. 142, at page 144, wherein the court held as general legacies certain bequests typified by a pecuniary legacy to the testator's daughter of $20,000 with direction to his trustees to turn over to her, in making payment thereof, in lieu of cash, certain stocks or securities which he might then have in the corporations therein specifically mentioned, at a value based upon the market price thereof at the time of payment. The court pointed out that this alternative for payment of the legacy in certain securities instead of in cash does not make the bequest demonstrative, since the testator did not point out a particular fund out of which the legacy was to be satisfied, but that the testator merely intended that if he died possessed of certain enumerated securities, his executors could avoid liquidation and pay in kind rather than in cash.
In the case of Industrial Trust Co. v. Tidd, 1928, 49 R.I. 188, 141 A. 464-465, we again find an alternative bequest in certain legacies of stock having a par value of $2,000 willed by testatrix with the provision, "if she does not desire to take said stock I give and bequeath to her the sum of $2,000.00 in money in place of said stock." The court stated that these bequests were general pecuniary gifts of $2,000.00 in favor of the beneficiaries and not adeemed by act of the testatrix in parting with the stock:
"In the will before us we find the unmistakable indication of an intention to make a gift to each of these legatees of the value of $2,000. To make that intention more emphatic, the testatrix has added the provision that, as to each of the legatees, if she does not wish to take the stock, the testatrix makes a bequest to her of $2,000 in money in place of the stock."
Testatrix, at the time of her death, owned none of the stock. Then, as in the instant case, the testatrix made a restatement or reemphasis of her purpose through an alternative bequest.
It appears to this court that in the instant case the testator intended simply to give the corpus of certain corporate stock holdings, respectively, to certain individuals; but in the event he decided prior to his death to dispose of any or all of his shares of the various stock designations, he designed an alternative bequest worded so as to be of equivalent effect. The fact that the restatement of his intent was also, in effect, a restatement of what would have eventuated had the alternative expression been omitted, seems to this court merely an emphasizing of his objective as well as an emphasizing of the legal effect of the testamentary gifts as general legacies. Under the ordinary rule the legal effect is that a general legacy of stocks, bonds, or other securities must be satisfied out of the general assets notwithstanding that at his death the testator owned less than all, or none, of the securities described in the will. Re McFerren's Estate, 1950, 365 Pa. 490, 76 A.2d 759, 22 A.L.R.2d 451, Annotation 458, 459. So it is seen that the alternative feature is nothing but a statement of the law applicable to a general legacy. It is simply a measuring vessel by which the beneficiary would receive the equivalent of the gift intended by the testator.
It seems abundantly clear to this court that the end result of the initial sentence of the bequest is in each of the subject items equivalent in effect to that of its alternative as enunciated in the second sentence. Had the testator intended these bequests to abate after the general legacies, this could have been accomplished through the simple expedient of adding but a few words, such as "payable from proceeds of sale of said stock", or testator could have specified payment out of a particular fund or property.
*220 We conclude that the alternative portions of the bequests do not manifest an intent on the part of the testator to take the gifts of the respective shares of stock out of the general into the demonstrative category. The legacies involved must be adjudged as general and should abate along with the other general legacies contained in the will. See Section 734.06, Florida Statutes, F.S.A. The judgment of the court below, therefore, is hereby reversed and remanded for further proceedings not inconsistent with this opinion.
Reversed.
ALLEN, J., concurs.
SHANNON, Judge (dissenting).
I am compelled to dissent. It would seem that in the first instance the majority opinion proceeds from the wrong premise in initially holding that the object of this appeal is to determine whether the disputed items in the will of Albert A. Henry are general or demonstrative bequests. While it is quite true that the ruling of the probate court was that these items represented demonstrative bequests, it is not incumbent upon the appellees to prove that the lower court's ruling was correct under penalty of reversal if they fail. On the contrary the burden is upon the appellant to show reversible error, and a well-recognized corollary to this fundamental appellate proposition is that a judgment or decree reaching a correct result will be affirmed despite erroneous reasons advanced by the lower court. 2 Fla.Jur. Appeals, § 297; Cottages, Miami Beach, Inc. v. Wegman, Fla. 1951, 57 So.2d 439; In re Freeman's Petition, Fla. 1955, 84 So.2d 544; Jaffe v. Endure-A-Life Time Awning Sales, Inc., Fla. 1957, 98 So.2d 77, and cases cited therein.
Applying this principle to the case at hand would then lead us to frame the question raised as follows: Did the county judge correctly rule that the legacy to the appellant church should abate before the legacies of the appellees? As Section 734.06, Fla. Stat. 1957, F.S.A., provides that demonstrative and specific legacies shall abate only after general and residuary legacies, and the gift to the appellant church is admitted to be a general legacy, it is immaterial whether the disputed legacies are classed as specific or demonstrative, and simply showing that they do not fall within the area generally designated as demonstrative does not automatically call for a reversal. Again, there are a number of cases setting out exceptions to the rule of pro rata abatement even among admitted general legacies. 34 A.L.R. 1245.
Proceeding then to the substantive aspect of this case, it must be borne in mind that the "intent" of the testator governs in all cases, and this "intent" is never actually formulated, for if the possibility of his estate being unable to satisfy all his bequests, or some other problem, had been anticipated by the testator he would have made provision therefor in his will without doubt; and it is in this context that the courts, over the last few centuries, have created the classifications of legacies and all the welter of attendant rules, which in theory were developed for the sole purpose of effectuating the testator's "intent", but in actuality are individual cases of the courts trying to second guess what he would have done had he known what they do.
This is clearly expressed in the introductory section of the chapter on Classes of Legacies and Devises, Page on Wills, Volume 4, § 1392, where it is observed that:
"While it is generally assumed that the terms which are used to designate these different classes of legacies have the same meaning, without regard to the nature of the problem, in the solution of which the classification is employed, it is by no means certain that they are used in the same way in all of these cases. The courts determine the class under which a legacy is to be placed, by ascertaining the incidents which testator intended that such *221 legacy should have, whether in case of abatement due to a deficiency in assets, or in ademption, due to the destruction or sale of the subject-matter of the gift, or in other questions such as to the right to accretions; and if the court has ascertained the testator's intention in such instances, the court then places the legacy in the class to which such incidents attach it. The court does not begin by determining the class under which the legacy is to be placed; and then attaching to the legacy in question, the incidents which ultimately attach to a legacy of such class. The classification of legacies and devises is, therefore, practically a matter of convenience in expression. The rights of the parties could be determined just as well without the use of the names of these classes of legacies and devises; although it would frequently take more words to express the same idea. It is quite likely, therefore, that a somewhat different meaning is given to these different names of classes, when used in connection with different problems.
"If the result is likely to be the same, whichever class of a legacy or devise it may be, the terms are likely to be used rather loosely. If a question of abatement is involved, and the result would be the same whether the legacy were specific or demonstrative, a legacy which is really specific may be called demonstrative. * * *
"Whether a given legacy is residuary, general, specific, or demonstrative depends upon the intention of the testator as shown by the entire will.
"This intention is whether or not testator is giving a specific thing, on the one hand, or on the other, whether he is making a bequest, devise and the like which is to be paid out of his general estate. It is not his intention as to the legal consequences which result when it is ascertained that the legacy is specific, demonstrative, or general. Indeed, in probably the greater number of cases, testator has no idea of the possible legal consequence, and, accordingly, no intention as to what the consequences shall be.
* * * * *
"As in other cases of construction, technical rules of construction are to be used only when testator's actual intention is in doubt.
"It would seem, from the following chapters, that it is very doubtful if the classification of devises and legacies which the courts have made, and the solutions of the different problems which they have attempted to build upon these classifications, do justice more often than they do injustice; or if they suit such vague and ill-formed intention as the average testator has any more often than they thwart and defy it."
The unfortunate results noted in the last paragraph quoted above seem to flow almost exclusively from courts placing a legacy or devise into a certain class, which it seems to fit according to the "rules" and then enforcing the incidents of that class, whereas those incidents which can be fairly determined the testator would have added to the legacy should be the first consideration, and then, if classification is necessary, the class should follow from the incidents, not vice versa. This is the way the classes were developed and would seem to be the way best calculated to carry out the testator's "intent." In the recent federal case of Kilcoyne v. Reilly, D.C., 249 F.2d 472, 475, the court had the problem of "rules" versus "intent" before it regarding the specific question of abatement, and stated:
"(1, 2) The general rules governing the abatement of legacies were developed to meet the situation where the net distributable assets of a decedent were insufficient to satisfy in full the testamentary gifts. This general rule provides that residuary *222 legacies abate first, followed by general legacies and then specific and demonstrative legacies, which give way together ratably. This order of abatement rests on an arbitrary presumption of law as to the probable intent of the testator where the will does not anticipate the necessity for abatement. The present validity of an assumption that testators tend to use specific and general legacies as a means of providing for those to whom or for whom they desire a priority is questionable. While there are few absolutes in this area, we can notice judicially, if we need, that contemporary wills more often than not use the residuary clause to carry out the most important provisions. It is impossible to say flatly that any pattern of disposition is controlling; each will must be examined in the light of the entire background and fact situation and only the most general guides can be formulated.
* * * * *
"Recourse to the history of the development of the general rules of abatement of legacies shows that they were evolved by courts over a period of time to deal with practical problems. The same source of judicial power by which courts formulated what might be called general rules of abatement of legacies empowers us to deal with the problem here presented. * * *"
With the rules of construction thus placed in their proper perspective, let us examine the disputed will.
Appellant's bequest was as follows:
"Item IV.
"I hereby give and bequeath to the Park Lake Presbyterian Church, located at Colonial Drive and Highland Avenue, Orlando, Florida, the sum of Ten Thousand ($10,000.00) Dollars."
The disputed bequests were identical in wording other than the name of the beneficiary and the stock bequeathed, and the following is typical:
"Item VI.
"I hereby give and bequeath to my brother, Harrison H. Henry of Mt. Vernon, New York, 150 shares of Union Carbide and Carbon Corporation stock. In event said stock has been sold then I hereby give and bequeath to my brother, Harrison H. Henry, an amount in cash equal to the value, at the time of my death, of the said 150 Shares of Union Carbide and Carbon Corporation stock. * * *"
The gift to appellant is clearly a general pecuniary legacy. Page on Wills, Vol. 4, Section 1393.
The gifts of stock were of the exact amount owned by the testator when making the will, and at his death, with a few exceptions occasioned by stock dividends and splits. Can it be said that no intent appears to favor these legatees of stock? That no specific property is designated to go to these persons or to answer for their legacies?
Bequests of stocks and other securities has been a particularly troublesome spot in a field that is hazy at best. Again referring to Page on Wills, Volume 4, Section 1397, it is said:
"The general rule is that if it appears from the entire will that the testator intends to pass particular stocks, bonds, or other securities which he has described with sufficient certainty, the gift is specific; if the provision amounts, in effect, to a direction to the executor to buy such a number of such stocks, bonds or other securities out of his estate generally, the gift is general; while if the provision, in effect, directs the executors to procure securities in question out of the estate generally, but charges the gift upon some particular fund or property, such as testator's securities which correspond to the description *223 in the will, the gift is demonstrative.
* * * * *
"If testator gives stocks, bonds, or other securities in such a way as to show that he gives specific items of property and that he does not direct the executor to buy such items of property it is specific or demonstrative. A reference to the securities as belonging to the testator, a reference which may be by the use of such word as `my,' or by some other expression which indicates ownership, shows that such bequest is specific." (Emphasis added.)
That Florida has followed this line of reasoning is demonstrated by the case of In re Vail's Estate, Fla. 1953, 67 So.2d 665, 666, wherein the following bequest was being construed:
"`I give and bequeath my five hundred shares of the stock of the St. Paul Fire and Marine Insurance Company, in equal parts, share and share alike, to the following five persons, * * *.'"
The Supreme Court classified this bequest as specific, pointing out that at the time of making the will this comprised the total amount of decedent's stock in the company. The case of In re McDougald's Estate, 1942, 149 Fla. 468, 6 So.2d 274 is cited, and it is cited by the majority in the instant case, however, the bequest of stock that was held to be general in that case contained no possessive words, and the testatrix owned more of the same stock than was included in the bequest.
Applying the test set out in the last quoted portion of Page on Wills, and reflected by In re Vail's Estate, supra, do we have any "expression which indicates ownership" coupled with a gift of the entire amount of stock then owned by the testator? This question must be answered in the affirmative unless we are prepared to ignore completely the sentence, "In event said stock has been sold then I hereby give and bequeath to * * * an amount equal to the value at the time of my death, of said stock." (emphasis added), which follows each bequest. These words clearly show that testator meant to give that exact stock then owned by him, and that the bequests do not "direct the executor to buy such items of property." Another, and seemingly unanswerable reason, such sentence should preclude the holding of these bequests to be general ones, is that if the testator intended the gifts of stock to be only claims against his general estate then the sentence following each gift, quoted above, which creates a claim against the general estate in the alternative, would be meaningless. It would appear, on the contrary, that the testator intended to give the specific stock he owned at the time, and anticipating the danger of ademption, though probably not by that name, added the provision following to bar this event from frustrating his wishes.
Whether the bequest in toto thereby becomes demonstrative, or is specific with a conditional alternative bequest is of no importance to the determination of the question of abatement, as has been previously pointed out.
If further support for this position is needed it might also be pointed out that while the record in this case is far from complete, the will itself tells us that one legatee of stock is a brother of the testator and another his nephew, and there are many cases which have considered such relationships in determining preferences under a will, even in situations involving disputes between admitted general legatees. Some of the cases are collected in 34 A.L.R., at page 1263, and summarized as follows:
"Circumstances of near relationship and dependence of the general legatee are not of themselves sufficient to indicate an intention on the part of the testator to give a preference over other general legatees, although such facts may be regarded as an auxiliary reason for allowing the preference, if *224 the will fairly justifies an inference that such was the intention."
Again in the later case of In re Luckel's Estate, 1957, 151 Cal. App.2d 481, 312 P.2d 24, 34, the following language was approved:
"`One of the few exceptions to the general rule that, where an estate is not sufficient to pay in full all the general legacies in the absence of an expressed indication otherwise, the legacies will abate pro rata, is that, where a legacy is for a near relative, such as the wife in the instant case, it will be preferred. Such must have been the intention of the decedent.'"
Considering the will in its entirety, in addition to the relationship existing between the testator and certain beneficiaries of the disputed legacies, I can come to no other conclusion than that the testator intended a preference to the personal legatees that was afforded by the lower judge's ruling, and would therefore affirm.