186 So.2d 80 (1966)
In re ESTATE OF Kate JEFFCOTT, Deceased.
Allcia JEFFCOTT, Ruth Draper, St. Luke's Episcopal Church, and Fort Myers Public Library, Appellants,
v.
F.E. STARNES and Loca Belle Yawn, Co-Executors, Appellees.
No. 5821.
District Court of Appeal of Florida. Second District.
April 27, 1966.
Rehearing Denied May 24, 1966.
*82 Charles L. Bigelow, Jr., of Allen, Knudsen, Swartz, Richardson & DeBoest, Fort Myers, for appellants Alicia Jeffcott and Fort Myers Public Library.
Dwight A. Whigham and Harry A. Blair, of Smoot, Blair & Whigham, Fort Myers, for appellants Ruth Draper and St. Luke's Episcopal Church.
William L. Graddy and Hugh Starnes, of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellees.
ALLEN, Chief Judge.
Appellants have sought review of a probate court order determining that (1) their cash bequests under the Jeffcott will are general bequests, (2) Section 734.041, Fla. Stats., F.S.A., of the Florida Probate Code does not apply to the Jeffcott Estate.
Kate Jeffcott died testate in 1961. Her will, as probated, contained the following relevant provisions:
"FIRST, after all my lawful debts are paid and discharged, I give and bequeath * * *."
Following this provision came many specific devises of Kate Jeffcott's real property. Among these devises were scattered the following cash bequests to appellants:
"To my cousin, ALICIA JEFFCOTT, $5000 cash and $500 per month for her lifetime, * * *.
"To RUTH DRAPER, 2224 Euclid Avenue, if living, $1500;
"To St. Luke's Episcopal Church in Fort Myers, Florida, $2,500;
"To The Fort Myers Public Library $2000 for the purchase of additional equipment; ALSO a flag of best quality to be purchased for the use of the Library."
After these cash bequests and specific devises appeared the following pertinent language:
"The remainder of my real estate is to be liquidated on a favorable market so that funds may be available to pay the various bequests named above. If funds are available it is my desire that the following be given an automobile of his or her choice. * * *
"After all expenses and bequests of every kind have been settled any remaining money is to be placed in an Educational Fund * * *."
There were several parcels of real property not specifically devised under the will.
The probate court ruled that the above cash gifts to appellants were general, not demonstrative, and that these bequests would, therefore, abate prior to the specific devises.
The determination of appellants' first point turns on which of these two categories the bequest is to be placed.
A general legacy has been defined as "one which may be satisfied out of the general assets of the testator's estate instead of from any specific fund, thing, or things. It does not consist of a gift of a particular thing or fund or part of the estate distinguished and set apart from others of *83 its kind and subject to precise identification. A general legacy has the prerequisite of designation by quantity or amount." Park Lake Presbyterian Church v. Henry's Estate, Fla.App. 1958, 106 So.2d 215.
A demonstrative legacy is a bequest of a certain sum of money, stock, or other property, payable out of a particular fund of property or security. It can neither amount to a gift of the corpus nor serve the purpose of releasing the estate from liability in the event the particular fund or property should fail. Two essentials of a demonstrative bequest are: (1) an unconditional gift in the nature of a general legacy, (2) that it indicate the fund or property out of which the legacy is to be satisfied. 96 C.J.S. Wills § 1125e, f (1957); 57 Am.Jur., Wills, § 1403 (1948). The distinguishing factor between a general and a demonstrative bequest is that the demonstrative bequest "is dependent upon a particular fund or a particular property for payment or discharge, and which cannot amount to a gift of the corpus." Park Lake Presbyterian Church v. Henry's Estate, Fla.App. 1958, 106 So.2d 215, 218.
The cash bequests at bar clearly fulfill the first essential; they are unconditional gifts in the nature of a general legacy.
Our concern then is whether the will's language, "the remainder of my real estate is to be sold on a favorable market so that funds may be available to pay the various bequests named above," created such a specific fund necessary to fulfill the second essential of a demonstrative bequest and whether demonstrative bequests would be in accordance with Kate Jeffcott's overall dispositive scheme.
We must first determine her general dispositive plan. Kate Jeffcott, in her preparation of the will, realized that debts or taxes and other expenses would have to be paid, "First after all my lawful debts are paid and discharged, I give and bequeath * * *"
If we connect part of the will just quoted with the last two paragraphs the logical effect is to charge the real property, not specifically devised with the burden of debts or expenses and taxes. The last two paragraphs of the will state, in pertinent part:
"The remainder of my real estate is to be liquidated on a favorable market so that funds may be available to pay the various bequests named above. * * *"
The bequests were to be paid thusly, but the will added:
"After all expenses and bequests of every kind have been settled any remaining money is to be placed. * * *"
The testatrix intended to charge her real property, not specifically devised, not only with the payment of the general legacies but also with the payment of debts, taxes and expenses. This type of fund does not carry the requisite specificity called for in the definition of a demonstrative legacy. The fund created was a general fund for general purposes, not a specific fund for specific purposes. See Armstead v. Union Trust Co. of District of Columbia, 61 App.D.C. 269, 61 F.2d 677 (1932).
The Court in Armstead held that general pecuniary legacies (items 4, 5 and 6 of the will) were not converted into demonstrative legacies by the subsequent item in the will (item 9) that designated a particular fund for the payment of debts, expenses, and pecuniary bequests; therefore, specific legacies did not abate proportionately therewith as a result of a deficiency in the fund. The court said, "In our view it was not the testator's intention by the provisions of item 9 to change the general legacies of items 4, 5, and 6 into demonstrative legacies, * * *" Armstead v. Union Trust Co. of District of Columbia, supra.
Appellants rely principally upon Buder v. Stocke, 343 Mo. 506, 121 S.W.2d 852 (1938) as being most parallel factually to the instant case. The real property to be made *84 the subject of the fund the general bequests were to come out of, however, was specifically described  The Stocke Farm.
We conclude that the testatrix, Kate Jeffcott, did not intend the next to last paragraph of her will to create demonstrative bequests out of the general bequests. The fund created was a general fund only; it was not specifically described to fulfill the second requisite of a demonstrative legacy.
The gist of appellants' Points II and III is whether Section 734.041, Fla.Stats., F.S.A., of the Florida Probate Law should be retroactively applied to an estate containing no nonprobate assets.
The testatrix died in 1961; her estate contained no nonprobate assets. The appellants seek to apply Section 734.041, as amended in 1963, to her estate. Section 734.041's retroactive application is through subsection (7) (b), which states in pertinent part:
"(7) This section shall apply:
"* * *
"(b) To estates of decedents dying after May 13, 1957, provided such decedent had by will directed apportionment of taxes to nonprobate assets consistent with the provisions hereof, and, * * * that such estate is still in the process of administration and the estate tax has not been finally determined and paid."
The will of the testatrix did not direct apportionment of taxes to any part of her estate and her estate contained no nonprobate assets.
The statute, by requiring that a testator direct apportionment of taxes, suggests that some affirmative compliance with its provisions is necessary to bring it to bear retroactively. This court would have to reject the statute's suggestion of affirmative compliance and tack on additional words to fill the statute's omission to estates containing no nonprobate assets. This manner of dealing with the section of the probate law would not only be contrary to the accepted rules of statutory construction, but also force us to consider the statute's constitutionality.
The overriding precept of statutory construction is the determination of legislative intent. Tyson v. Lanier, Fla. 1963, 156 So.2d 833. Where the statute is clear and unambiguous a court should refrain from engaging in speculation as to what the legislature intended. Armstrong v. City of Edgewater, Fla. 1963, 157 So.2d 422. Further, a court will refuse to tack additional words on a statute in a situation where uncertainty prevails as to the legislature's intent. Haworth v. Chapman, 1933, 113 Fla. 591, 152 So. 663; Armstrong v. City of Edgewater, supra. "When there is doubt as to the legislative intent or where speculation is necessary, then the doubts should be resolved against the power of the courts to supply missing words." Armstrong v. City of Edgewater, supra.
Appellants have not clearly demonstrated, and we have not found, that the legislature intended the section to cover estates containing no nonprobate assets. The most that can be said for the appellants is that the section's application to the instant estate is uncertain. In this situation, this court cannot supply additional words to make the statute apply to estates having nonprobate assets where the legislature's intention to do so is uncertain.
Even if we were to hold that Section 734.041 should apply retroactively to the Jeffcott Estate, then appellees would confront us with the question of the section's constitutionality. Courts will sustain legislative acts where it is possible to do so. Also, it is the invariable practice of the courts never to consider, unless imperatively required, the constitutionality of state legislation. 16 Am.Jur.2d, Constitutional Law, § 111, p. 298 (1964).
*85 We find, merely, that Section 734.041 is inapplicable to the Jeffcott estate and that in so doing we do not need to pass upon the section's validity.
The order of the probate court is hereby affirmed.
PIERCE, J., and LOVE, WILLIAM K., Associate Judge, concur.