388 So.2d 1238 (1979)
MIAMI-DADE WATER & SEWER AUTHORITY, Appellant,
v.
Sergio CORMIO, Appellee.
SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Appellant,
v.
Dawn ROLLINS, Appellee.
Nos. QQ-421, RR-83.
District Court of Appeal of Florida, First District.
Decision December 12, 1979.
Order December 13, 1979.
Memorandum January 23, 1980.
Mary Ann Stiles, Tallahassee, for Associated Industries of Florida.
Steven P. Kronenberg, Pyszka, Kessler & Adams, Miami, amici curiae supporting the Motion to Dismiss.
John F. McMath, Miami, for appellants Miami Dade and Old Republic Ins. Co.
George W. Chesrow, Walton, Lantaff, Schroeder & Carson, and Herman J. Russomanno, Miami, for appellant Southern Bell.
Fletcher N. Baldwin, Jr., University of Florida, Gainesville, and Jerold Feuer, Freed & Feuer, Miami, for appellees Cormio and Rollins.
Dan F. Turnbull, Jr., Tallahassee, for Florida Department of Labor and Employment Security.
Before MILLS, C.J., and ROBERT P. SMITH, Jr. and SHIVERS, JJ.

DECISION
Judge MILLS: Gentlemen, the Court has arrived at its ruling or decision in these cases, and at this time each Judge will individually give you his ruling and, briefly, the reasons.
I would deny the appellees' motions to dismiss on the ground this Court lacks jurisdiction because section 46.1 is unconstitutional. I would hold that section 46.1 is constitutional.
It is my opinion that this Court has jurisdiction under article V, section 4(b)(2) which provides that district courts have power of direct review of administrative actions as prescribed by general law. It is my opinion that this is a grant of power and not a limitation.
It is my opinion that section 46.1, chapter 79-40, Laws of Florida, does not violate the territorial jurisdictional requirements of article V, that this Court would merely be reviewing administrative agency action of an agency headquartered in Leon County, which is within the First District Court of Appeal District.
*1239 It is further my opinion that section 46.1 is a general law rather than a special law. It has to do with workers compensation appeals, subjects all parties to the same rules, all persons are within the same class and throughout the state are treated the same. The geographic boundaries of the First District Court of Appeal set forth in chapter 35 have not been changed by this chapter.
It is my opinion that the legislature has authority to implement article v, section 4, and this is all that section 46.1 does.
I do not feel that the equal protection provisions of the state and federal constitutions have been violated. I do not feel that there has been any change in the voting rights, that the citizens of each district are still entitled to vote for the Judges in those districts.
Lastly, it is my opinion that there are compelling and also reasonable and practical reasons for this legislation.
I therefore would deny the motions to dismiss and would hold section 46.1 constitutional.
Judge SMITH: I agree with what Judge Mills has said. I would not emphasize quite as much as he, perhaps, the notion that this is a review of an order of an agency headquartered in Tallahassee. I recognize in the terms of the workers compensation law the order is entered by the deputy commissioner; and although it must be filed in Tallahassee, it's served by the commissioner on the parties from wherever it is that the order is entered; and I think it might be straining a point to insist that that is rendered in any kind of jurisdictional sense in Tallahassee. But nevertheless, there is a geographical nexus between the administration of the workers compensation law and Tallahassee.
The more important thing that appeals to me is that I believe the language in article V, section 4(b)(2), "district courts of appeal shall have the power of direct review of administrative action as prescribed by general law," very succinctly leaves to the legislature the choice, perhaps unwisely, perhaps wisely, but nevertheless leaves to the legislature the choice of how administrative action shall be reviewed in the article V court system.
In contrast to the very explicit relationship between district courts of appeal and their geographic districts, representing in the aggregate the combined jurisdiction geographically of the courts, the article V courts that are to be reviewed in each district court, there is no parallel with the section 4(b)(2) review of administrative action.
That is to say, it would be impossible for the legislature to say that the Dade County Circuit Court would be reviewed in its judgment by the District Court of Appeal, First District, because the Circuit Court of Dade County is a constitutional court with a geographic presence and identity of its own, and the jurisdiction of the Third District Court of Appeal is related to that jurisdiction of the circuit court, not so, administrative agencies.
As far as I can tell, the constitution is unaware, is unconscious, of how and where workers compensation claims are decided. In fact, it's unaware that there is such a thing as workers compensation claims, and so, has no bent or bias, or bent towards geographic identity of the place where the decision is made or the place where the claimant lives or the place where the injury was suffered or the place where the contract of employment was entered into, or any of those indicia of convenience which may be useful in assigning the place where the hearing is held or the place where the order is entered; but it is of no consequence, in my opinion, under article V pertaining to the jurisdiction of district courts of appeal. District courts of appeal have all writ power, which extends by statute beyond the jurisdictional limits.
There is this one aspect of article V, section 4, that perhaps may seem an impediment to this view, and that is that our Marshal, under section 4, is entitled and empowered to execute the process of our court only throughout the territorial jurisdiction of the court, as in contrast to *1240 throughout the state of Florida. Originally, the language permitted the Marshal to exercise the process throughout the state, but in 1972 it was confined to the territorial jurisdiction of the court.
And I believe if the legislature had not provided that writs of attachment and writs of execution and writs of sequestration and writs of garnishment could be effective beyond, in certain circumstances, the limits of the court, territorial limits, returnable in various ways before other courts, there may be some question as to our power to effectuate our judgment in cases of this sort. But I believe that since the legislature has provided that, there is a means and it's a means that is constitutionally available to us.
I don't find any diminution of anyone's right to vote.
As I understand the principles that were cited to us this morning, where it's not prohibited by the constitution, the legislature may enlarge the jurisdiction of a court unless that enlargement comes at the expense of another court exercising constitutional powers.
The jurisdiction of this court has been enlarged by this  there's no doubt about it  but no other court suffers diminution, in my opinion. No other district court of appeal had jurisdiction of workers compensation appeals prior to the effective date of this act, and they don't have it now. They haven't lost anything of their constitutional powers by reason of the expansion of this court's jurisdiction.
It was suggested that the Supreme Court of Florida has had a diminution of its jurisdiction, previously existing. I think that is very problematic because that jurisdiction was limited certiorari review of Industrial Relations Commission orders, in contrast to the more direct review of Industrial Deputy Commissioners' orders which is now afforded in this court. I don't believe that review is of such consequence as to constitute a diminution of the Supreme Court's prior jurisdiction.
The people who voted for, as Judge Mills stated, the judges in the third district will continue to do so. I don't believe that anyone has a constitutional right to vote on the retention or ouster of judges on the basis that their decisions can affect their lives. We are assigned our voting privileges under article V to territorial jurisdiction, and that is without regard for what effect other district courts of appeal may have in their decisions upon us as residents and voters.
Besides that, recognizing as we do with some  as I do, with some apprehension, that this, indeed, section 4(b)(2), enables the legislature to say that the District Court of Appeals, First District, shall have this review, workers compensation or any other administrative action, and to change it five years from now and to move around jurisdiction within the judicial system, which is potentially very dangerous, I think it's quite possible to say that the people who by their votes elect senators and representatives now have more power over the article V courts than they previously had.
So in my opinion, the wisdom of this legislation being not within our power to pass on, it's constitutional.
Judge SHIVERS: I would deny the motion to dismiss.
In my opinion, this statute is capable of an interpretation that would make it unconstitutional. But it is also capable of an interpretation which would lead to its constitutionality. Briefs and arguments have been impressive on both sides.
The law is that there is a presumption of the constitutionality of a statute, which presumption continues until the contrary is proved beyond a reasonable doubt. And when a statute is capable of two interpretations, the law is very clear that we are required to adopt that interpretation that would lead to its constitutionality.
I would uphold the statute as being constitutional on the grounds that these appeals are reviews of an administrative agency which has its headquarters in Tallahassee, here in Leon County, which is situated *1241 within the geographical boundaries of the First District Court of Appeal.
In my opinion, this is a general and not a special law. All workers compensation appeals are subject to the same rules of appeal. All persons within the class throughout the state are treated the same.
I would deny the motion to dismiss.
Judge MILLS: Gentlemen, so that you might know, the Court will enter an order this afternoon, if possible, certainly no later than tomorrow, denying the appellees' motions, holding that section 46.1 is not unconstitutional, certifying the question to the supreme court as of great public interest, and dispensing with a petition or petitions for rehearing.
So that you might have an explanation as to this latter statement, the Court has spent considerable time reading the briefs, the memoranda briefs, doing its own independent research, and has heard your oral arguments. It feels that you have done a very outstanding job in providing the Court with outstanding arguments and authorities and that we have had the benefit of probably everything that you can do to help us, and we have done everything that we can do to help ourselves.
Therefore, in order to expedite this matter of great public interest, we feel we would be doing the citizens, each of you, and everyone involved the best we could by going ahead and setting the matter up for whatever action is deemed appropriate by you once our order is entered. But it will be entered this afternoon or tomorrow, and you will be furnished with copies in due course.
Do any of you have any questions at this time?
If not, the Court appreciates the time and effort that you have devoted on behalf of your clients and to the Court in your presentations, and the Court will now be in recess.

ORDER
Appellees move the Court to dismiss the above workers' compensation appeals on the ground the Court does not have jurisdiction because Section 46(1), Chapter 79-40, Laws of Florida, is unconstitutional. The Court has considered briefs and memoranda briefs and has heard oral arguments of the parties and amicus curiae. The motions to dismiss are denied. We hold that Section 46(1), Chapter 79-40, is constitutional, and this Court has jurisdiction to review the orders of the Judges of Industrial Claims in the above causes.
The Court certifies to the Supreme Court of Florida as a matter of great public interest the following question:
Whether Section 46(1), Chapter 79-40, Laws of Florida, providing for review of workers' compensation orders of Judges of Industrial Claims and Deputy Commissioners by the First District Court of Appeal, effective 1 October 1979, is constitutional?
Petitions for rehearing are dispensed with to expedite the Supreme Court's consideration of this matter of great public importance and because this Court has given the parties the opportunity to make full and complete written and oral presentations of their contentions which have been considered in their entirety by the Court.
The oral decision of this Court entered in open court and participated in by each Judge of the panel was transcribed by a court reporter. The transcript will be made a part of the court files in these cases. Each Judge reserves the right to supplement his oral decision by subsequent written memorandum.
The stay of action in the above appeals is removed effective the date of this order and all future actions shall comply with the Florida Appellate Procedure Rules.
By Order of the Court dated this 13th day of December, A.D. 1979. Chief Judge E.R. Mills, Jr., Judge Robert P. Smith, Jr., and Judge Douglass B. Shivers.

MEMORANDUM
ROBERT P. SMITH, Jr., Judge.
I hope to state in a more orderly way here the views I expressed from the bench *1242 when the court announced its decision, on December 12, 1979, to deny appellees' motions to dismiss based on the asserted unconstitutionality of Section 46, Chapter 79-40, Florida Laws.[1] The extended argument we heard that day was the endpoint of an accelerated briefing and deliberative process, including a pre-argument conference with counsel on December 4, by which the panel sought to give a considered but prompt judgment of the constitutional issue, so that it might quickly be presented to the Supreme Court. The panel therefore did not delay its order on the pending motions, but entered it without a formal written opinion on December 13, reserving, however, this privilege of a delayed written statement by any individual judge.
Section 46(1) of Chapter 79-40, Laws of Florida amends Chapter 440, Florida Statutes, to direct all appeals from workers' compensation orders of deputy commissioners, and from orders of judges of industrial claims under the law before amendment, to this court. The legislation sends those appeals here, and it transfers here all pending appeals to the abolished Industrial Relations Commission, irrespective of whether the compensation order was entered or the hearing held in the judicial district which is this court's territorial jurisdiction, and also without regard for other kinds of geographic logic by which the legislature might have raised these appeals in the district or districts where, say, the employer's main office is, or where the worker lives, or usually works, or was injured.
Attacking Section 46(1) and contesting our jurisdiction in these cases, appellees say there is a constitutionally insufficient geographic nexus between this court and these claims, or these parties, or these orders. Appellees urge, more particularly, that Article V prohibits legislation directing compensation appeals here unless this court is the geographically logical choice, from among the five district courts of appeal, in either of two ways: the action of deputy commissioner must have "occurred" within this court's appellate district, so that the appeal "arises" within our territorial jurisdiction, see Crews v. Town of Bay Harbor Islands, 378 So.2d 1265 (Fla. 1st DCA 1979);[2] or the underlying claim must be located in some way within this court's appellate district, e.g., by the presence of the worker's residence, the place of injury, or some other and similar situs.
In my opinion appellees' objections to this legislation are based on venue considerations which are not the subject of any Article V restriction on the legislative power, and which therefore are strictly of legislative concern.
From the principle that the Florida Constitution is a limitation of the legislative power, not a grant of it,[3] the Supreme Court has derived this view of legislation enlarging the jurisdiction of a certain court or courts:
While constitutional jurisdiction cannot be restricted or taken away, it can be *1243 enlarged by the Legislature in all cases where such enlargement does not result in a diminution of the constitutional jurisdiction of some other court, or where such enlargement is not forbidden by the Constitution.
Harry E. Prettyman, Inc. v. Florida R.E. Comm'n ex rel. Branham, 92 Fla. 515, 525, 109 So. 442, 445 (1926); South Atlantic S.S. Co. of Del. v. Tutson, 139 Fla. 405, 422, 190 So. 675, 682 (1939); Sun Ins. Office, Ltd. v. Clay, 133 So.2d 735, 742 (Fla. 1961). But cf. Warren v. State, 174 So.2d 429, 430 (Fla. 1st DCA 1965) (dictum).
The legislative assignment of these appeals to the District Court of Appeal, First District, does not diminish the constitutional jurisdiction of any court. That is so because no court has any constitutionally-vested power to review compensation orders of judges of industrial claims, or deputy commissioners. Previously the Supreme Court had jurisdiction to review orders of the Industrial Relations Commission, through its Article V, Section 3(b)(3) power to "issue writs of certiorari to commissions established by general law having statewide jurisdiction." Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974); Vargas v. Americana of Bal Harbour, 345 So.2d 1052 (Fla. 1976). Abolishing the Industrial Relations Commission did not diminish the Supreme Court's constitutional powers under Section 3(b)(3); it simply removed a statutory object of those powers. Similarly, to the extent any district court of appeal or circuit court may have had latent or theoretical constitutional power to review orders of judges of industrial claims by extraordinary writ, that power remains, though it will be unexercised when an ordinary statutory remedy is provided. See State ex rel. Dept. of General Serv. v. Willis, 344 So.2d 580, 590 (Fla. 1st DCA 1977):
It is not that the power of circuit courts has been lessened, nor that their historic writs have been surrendered. Rather the occasions for their intervention have lessened.
See also State ex rel. Landis v. Simmons, 104 Fla. 487, 140 So. 187 (1932), prohibiting the Circuit Court of Duval County from entertaining constitutional certiorari jurisdiction to review administrative action which occurred in Duval County but which was by statute reviewable only in the Circuit Court of Palm Beach County.
At oral argument appellees suggested that this act diminishes the Supreme Court's constitutional jurisdiction by compromising its power to remedy direct conflicts in decisions by district courts of appeal. Article V, Section 3(b)(3). If as appellees suppose the assignment of all workers' compensation appeals to this court will tend to reduce direct decisional conflicts for the Supreme Court to resolve, that diminution is not of the Supreme Court's conflict jurisdiction but only of its caseload. An abundance of district court decisional conflicts is neither a constitutional virtue nor a required condition for the full exercise of the Supreme Court's powers.
So it appears this legislation does not diminish any other court's constitutional jurisdiction, as distinguished from statutory jurisdiction which other courts have exercised from time to time, under various statutes then increasing their jurisdiction even as this statute now increases ours. Is the enlargement of this court's jurisdiction otherwise "forbidden by the Constitution", as envisioned by Prettyman, Tutson, and Sun, cited above? Certainly the Constitution does not expressly forbid what the legislature has done. Nor, I am persuaded, is there any forbidding by necessary implication. Article V, Section 4(b)(2) comes closest to describing the legislature's power of assigning workers' compensation appeals to this court exclusively.
District courts of appeal shall have the power of direct review of administrative action, as prescribed by general law.
I would have supposed that workers' compensation orders of a judge of industrial claims or a deputy commissioner  those highly qualified officers, however denominated, who administer Chapter 440  constitute *1244 "administrative action"[4] within the meaning of Section 4(b)(2), and within the meaning, too, of identical expressions of legislative power touching the jurisdiction of the Supreme Court, Section 3(b)(7), and circuit courts, Section 5(b). But the Supreme Court has for various purposes characterized the compensation orders of the Industrial Relations Commission, and those of judges of industrial claims, too, as "quasi-judicial", not administrative, indeed "more judicial than quasi-judicial". LeLoup, supra, 307 So.2d at 171; Hughes v. Public Fin. Serv., Inc., 319 So.2d 18 (Fla. 1975); In re Workmen's Compensation Rules of Procedure, 343 So.2d 1273 (Fla. 1977). See also Myers v. Hawkins, 362 So.2d 926, 931 n. 15, 932 (Fla. 1978). LeLoup specifically held workmen's compensation orders are not "administrative action" within the meaning of Article V, Section 4(b)(2).
If Chapter 440 orders are not "administrative action" referred to in Section 4(b)(2), concerning review by the district courts of appeal, then certainly those orders are not "administrative action" within the meaning of Sections 3(b)(7) and 5(b), which identically express a legislative power to provide review by the Supreme Court or by the circuit courts. But it does not follow from the Constitution's silence that the legislature is powerless to provide workers' compensation appeals to the court or courts of choice, and that circuit or district courts must employ extraordinary constitutional writs in these cases. For we are reminded that Sections 3(b)(7), 4(b)(2), and 5(b), are not grants of power, nor limitations, but "simply an expressed recognition" of legislative power existing because the Constitution does not prohibit it. In re Advisory Opinion to the Governor, supra n. 3, 223 So.2d at 37. If the Constitution's silence were an impediment to legislation directing workers' compensation appeals to this court, it would equally be an impediment to legislation directing that appeals "be taken to the district court of appeal in the district where the injury occurred," as informally recommended to the legislature by the Supreme Court. 53 Fla.Bar Jour. 300 (No. 5 May 1979).
LeLoup thus prevents our regarding Sections 4(b)(2) and 5(b) as expressing legislative power to raise appeals from workers' compensation orders to the circuit or district courts. Yet those sections of Article V, and their interpretation in years past, remain highly significant to the present question of whether the legislature, having power (uncontested here) to parcel these appeals among the district courts on some regional basis, may instead select one district court of appeal to review all such orders. If Article V imposes geographic conditions or restrictions on the legislative power to raise appeals from compensation orders to this court, we should expect to find those same conditions and restrictions operating on the legislative power to assign appeals from administrative action under Sections 4(b)(2) and 5(b). Compensation orders and administrative action may be different, as LeLoup held, but they are not different in their susceptibility to legislation assigning them for review to an Article V court. As will be seen, the legislative experience in assigning administrative action to Article V courts for review belies the notion that Article V imposes territorial conditions or restrictions on the legislature's power so to assign compensation orders.
As stated at the outset, appellees conceive that Article V forbids legislation assigning workers' compensation appeals to a district court or courts except by geographic logic which either (a) assigns appeals to the court of the appellate district where the action to be reviewed "occurred", whence the appeal "arises"; or (b) assigns appeals to the court of the appellate district where the claimant lives, or worked, or was injured, or where the employer's business is, or such.
There is no doubting that the district courts of appeal were created within territorial *1245 jurisdictions and that geographic limitations are central to their character. Article V, Section 1, requires that the legislature "divide the state into appellate court districts and judicial circuits following county lines." Section 4(a) provides for a district court of appeal "serving each appellate district". No person is eligible to be a judge of a district court of appeal "unless he ... resides in the territorial jurisdiction of his court." Section 8. Judges of those courts are retained in office, or not, by "qualified electors voting within the territorial jurisdiction of the court... ." Section 10. Most significantly for present purposes, the jurisdiction of each district court of appeal to hear appeals from other Article V courts is limited territorially to trial courts headquartered in counties and circuits within the appellate district established by law. Section 4(b)(1).[5]
The territorial limitation on this court's appellate jurisdiction does not prevent legislative assignment to this court of review powers over administrative action taken beyond the district. Section 4(b)(2) contains no express limitation to that effect, unlike Section 8, describing who may be a judge of the court, and Section 10, describing who may vote in retention elections. There is no more reason to imply such a limitation in Section 4(b)(2) than there is to imply that limitation in the district court's power to issue the extraordinary writ of certiorari pursuant to Section 4(b)(3). As a matter of constitutional jurisdiction, a court's writ of certiorari reaches an administrative agency wherever in the state it is found, irrespective of territorial limits on the court's appellate jurisdiction; and only because of statutory or common law venue policies, not for constitutional reasons, does a district court of appeal confine its exercise of certiorari jurisdiction to cases in which it is territorially logical in some way for that court, rather than a sister court, to act. Star Employment Service, Inc. v. Florida Indust. Comm'n, 122 So.2d 174 (Fla. 1960).[6]
If the Constitution prohibited district court review of administrative action except in the district where that action "occurred", whence the appeal "arose", the Supreme Court would have held in Star that the District Court of Appeal, First District, alone may review orders of the Industrial Commission, headquartered at Tallahassee, whence the petition for certiorari arose. But the Court did not so hold; rather the Court found the matter of choosing an appropriate court of review is controlled by statutes, or by the agency's convenience, or by the parties' choice, and so remanded the case to the District Court of Appeal, Third District.
The territorial logic which appellees would spread across the jurisdictional section, Article V, Section 4, is expressed there only in Section 4(b)(1), governing jurisdiction of appeals from other Article V courts, and in part of Section 4(b)(3), making writs *1246 of habeas corpus returnable before a circuit judge in the district. There is one obvious reason why this territorial logic is expressed in those subparts of the jurisdiction section, and there only. Article V imposes a unique geographic relationship, rather like that between the strata of a pyramid, among the geographically established Article V courts. The Constitution establishes them in geographic jurisdictions  counties, circuits, districts and state; fixes them in geographic relationship with one another; and directs appeals from judgments, rendered within circuits, to courts established within districts, embracing circuits. Section 4(b)(1) makes this relationship geographically appropriate. On the other hand, administrators of the executive branch are not geographically established by Article V; therefore they are not established in geographic relationships with Article V courts. The same is true of those "more judicial than quasi-judicial" personages, Chapter 440 deputy commissioners. However similar their qualifications and functions may be to those of judicial officers, Article V does not establish those commissioners geographically, as it does its courts; and Article V does not, therefore, establish them in geographic relationships with its courts.
In other words, Article V, having carefully placed its courts in geographic territories and geographically logical relationships with each other, expects its courts to act where they are placed and in those judicial relationships exclusively. State ex rel. Shevin v. Rawls, 290 So.2d 477 (Fla. 1974); University Fed. Sav. and Loan Ass'n v. Lightbourn, 201 So.2d 568 (Fla. 4th DCA 1967). But Article V is without knowledge of whether these workers' compensation awards "occurred" at all, let alone where they occurred, nor how or where appeals from them "arise" to a district court of appeal, if indeed they do. Concerning those matters Article V professes no knowledge and no preference; they are legislative concerns.
For those reasons, then, I think it is not shown as a matter of constitutional law that the territorial character of this court's organization, and of its jurisdiction to review decisions by Article V trial courts, territorially restricts the legislative power to direct review here of administrative action or this nonadministrative, nonjudicial action under Chapter 440. But if it were to be assumed that a district court of appeal cannot entertain any workers' compensation appeal that does not "arise" in its district from action "occurring" in its district, see Crews, supra, then what becomes of the legislative alternative, said by appellees to satisfy the demands attributed to Article V, of assigning that review to district courts, or to circuit courts having the same territorial characteristics on a local scale,[7] on the basis of where a party lives, or works, or was injured?
Appellees offer this alternative reading of the geographic message they find in Article V because they do not wish to condemn, by the inexorable geographic logic found in Section 4(b)(1), numerous statutes which commonly assign administrative review on the basis of considerations other than where the action "occurred", whence the appeal "arises". In Willis, discussing the judicial review provisions of the 1974 Administrative Procedure Act, we mentioned by the way several statutes which previously assigned administrative review to the circuit courts, or to district courts of appeal, in a variety of ways. State ex rel. Department of General Serv. v. Willis, supra, 344 So.2d at 588.[8] Section 461.10, Florida *1247 Statutes (1973), authorized judicial review of an order suspending a podiatry license "in the circuit court of the circuit in which said license is recorded." Other statutes authorized judicial review of administrative action in the circuit court of the county where the hospital, if licensed, would be located, Section 395.14, Florida Statutes (1973); in the district court of the district where the disciplined liquor dealer did business, Section 561.29(7)(b); and in the circuit court of the circuit where the disciplined citrus dealer had his main office, Section 601.68. Concentrating administrative review power in the district courts of appeal, the 1974 Administrative Procedure Act did not assign review exclusively to the district court where the administrative action "occurred", whence the appeal "arose", which is the Section 4(b)(1) jurisdiction model. Instead, Section 120.68(2) authorizes district court review in the district "where the agency maintains its headquarters" (which may functionally be the same as where agency action "occurred") or, alternatively, by the "district court of appeal in the appellate district ... where a party resides."
If the jurisdictional model of Section 4(b)(1) compels review of these "Dade County orders" by the District Court of Appeal, Third District,[9] legislation directing those appeals here would seem unconstitutional even if the legislature's stated logic were that a party to the "Dade County order" lives or works within the First District. [That is the rigorous territorial logic of Section 4(b)(1), placing Article V courts in strict geographic relationships with each other; it would be constitutionally outlandish to legislate that the District Court of Appeal, First District, may entertain an appeal from the Circuit Court of Dade County if a Duval County resident is a party.] Thus, if legislation may assign administrative appeals only to the district where the action "occurred", whence the appeal "arises", Section 120.68(2) is unconstitutional in permitting review of "foreign" orders in the district of a party's residence.
But of course appellees and I agree that Section 120.68(2) is not unconstitutional. Nor would it have been unconstitutional for the legislature, on the Supreme Court's recommendation, to have directed workers' compensation appeals to the district court in the district "where the injury occurred," even if that were not where the compensation order was entered.[10] 53 Fla.Bar Jour. *1248 300, supra. That is so, in my opinion, because the choice of a circuit court or district court of appeal forum for review of nonjudicial action is strictly a matter of venue preference, on which Article V is silent and the legislature may speak without restriction. Under appellees' construct of geographic limitations, however, some special dispensation must be found in Article V for legislation permitting judicial review of a foreign nonjudicial order in the district where some party works, lives, has an office, or was injured. That dispensation is not to be found in Article V, and its absence further persuades me that Article V does not geographically restrict the legislature's use of the judicial system to review nonjudicial governmental action.
To summarize: In the exercise of our powers to review orders and judgments of Article V courts, by appeal under Section 4(b)(1) and by writs under 4(b)(3), this court must act within a territorial jurisdiction[11] which cannot be expanded or contracted by the Legislature except in accordance with Section 9. Advisory Opinion to the Governor, 374 So.2d 959 (Fla. 1979). Nevertheless, the legislature is empowered to add to the general jurisdiction of the district courts, or any of them, duties to review administrative or other nonjudicial governmental action which is not constitutionally assigned to another court. As long as the legislature does not decrease the general jurisdiction granted any court by the Constitution, this or any court may additionally be constituted as "a court of special and limited jurisdiction in some cases" by virtue of "special powers conferred upon it by special statute." State ex rel. Landis v. Simmons, supra, 104 Fla. at 494-95, 140 So. at 190, quoting Ruling Case Law.
In times past, when assigning judicial review of administrative or nonjudicial action, the legislature frequently enacted a venue logic similar to that of statutes placing suits in the trial court system, Section 49.011, and locating nonjudicial hearings within the state, Section 440.25(3)(b). That venue logic emphasizes the convenience of at least one resident party, which in turn is emphasized by courts in construing or justifying those statutes. E.g., State ex rel. Landis v. Simmons, supra, 104 Fla. at 498, 140 So. at 191; Maryland Cas. Co. v. Marshall, supra fn. 9, 106 So.2d 215. But venue is determined by statutes, not by convenience considered abstractly, and not by the Constitution. The legislature has now determined that other considerations besides party convenience bear on the assignment of appeals from Chapter 440 orders, those presumably including a hope for uniform decisions at less ultimate cost to the public. So even assuming that it is less convenient for distant parties to litigate in this court instead of in the Industrial Relations Commission, other considerations are more than sufficient to sustain this legislation against a due process objection. I find nothing in Article V which requires a different result.
NOTES
[1] As amended by Chapter 79-312, Section 1, and codified as Section 440.271, Florida Statutes (1979), Chapter 79-40, Section 46, provides in part:

(1) After September 30, 1979, review of any order of a deputy commissioner entered pursuant to chapter 440, Florida Statutes, shall be by appeal to the District Court of Appeal, First District. On October 1, 1979, all appeals pending before the Industrial Relations Commission shall be transferred to the District Court of Appeal, First District, and the court shall act on such appeals.
(2) The Industrial Relations Commission is hereby abolished as of October 1, 1979... .
[2] In Crews another panel of this court disagreed with our decision in this case, saying there appears to be "no basis for finding such administrative orders to constitute state agency action occurring within this district" and (by the dissent) that "This cause arose outside the territorial jurisdiction of this court... ." (emphasis added.)
[3] Monington v. Turner, 251 So.2d 872 (Fla. 1971); State ex rel. Collier Land Inv. Corp. v. Dickinson, 188 So.2d 781 (Fla. 1966). When there is no constitutional impediment to certain legislative action, a constitutional provision seeming to grant legislative power will be treated as neither a grant nor a limitation, but as "simply an expressed recognition of a power existing in the legislative department of the state government." In re Advisory Opinion to the Governor, 223 So.2d 35, 37 (Fla. 1969).
[4] See Continental Cas. Co. v. Hartford Acc. & Indem. Co., 151 Fla. 742, 10 So.2d 440 (1942); Stansell v. Marlin, 153 Fla. 421, 14 So.2d 892 (1943); City of Miami v. Saco, 156 Fla. 634, 24 So.2d 115 (1946); Vargas, supra, 345 So.2d at 1053.
[5] Article V, Section 4(b)(1):

District courts of appeal shall have jurisdiction to hear appeals ... from final judgments or orders of trial courts, including those entered on review of administrative action, not directly appealable to the supreme court or a circuit court... .
Former Article V, Section 5(3), before the 1972 amendments, expressed the territorial limitation on appeals even more clearly:
Appeals from trial courts in each appellate district... may be taken to the court of appeal of such district... .
[6] In Star the Supreme Court held that Industrial Commission orders respecting private employment agency licenses were reviewable by certiorari in the district courts of appeal, pursuant to the Article V certiorari powers of those courts. Then considering which might be "the proper Court of Appeal to consider the case," 122 So.2d at 177, the Court determined that the problem was one of venue, not jurisdiction, indeed that the choice of courts by state agencies "is more a matter of historic policy for the convenience of the people and the public agency, than it is a fixed rule of law." The Court held the District Court of Appeal, Third District, was the proper court of certiorari review, not for any reason of constitutional preference, and not because the other district courts lacked constitutional jurisdiction, but because the Industrial Commission, having not asserted its privilege to be heard in the First District, "has itself established the venue by instituting the proceeding in the Third District, and by defending against the requested review in the Court of Appeal ... having jurisdiction in that area... ." 122 So.2d at 178.
[7] In organization circuit courts always had the territorial characteristics which were imposed on the organization of district courts of appeal in 1957. In jurisdiction they also "serve" limited geographic areas, Section 5(a). Section 5(b), as amended in 1972, provides in terms identical to Section 4(b)(2):

Jurisdiction of the circuit court [sic] shall be uniform throughout the state. They shall have the power of district review of administrative action prescribed by general law.
See also fn. 4, supra.
[8] Like the statute before us now, certain of those statutes named a particular circuit court or district court of appeal as the court of review. Section 464.21(6), Florida Statutes (1973), granted jurisdiction to the Circuit Court of Leon County to review disciplinary orders of the Board of Nursing. Section 527.17 granted jurisdiction to the District Court of Appeal, First District, to review Department of Insurance orders pertaining to liquefied petroleum gas. See also Alderman v. Conner, 205 So.2d 25 (Fla. 2d DCA 1967), cert. den., 212 So.2d 866 (Fla. 1968), enforcing Section 601.66(4), Florida Statutes (1965), which directed certiorari review of citrus code orders by the "circuit court in and for Polk County." There is no reason to suppose those statutes particularly offended Article V by calling the court of choice by name, instead of stating facially objective criteria by which only one particular court could be chosen  for example, those like Section 471.28, Florida Statutes (1973), requiring review of engineering license revocations in the circuit court of the circuit where the board's headquarters is located.
[9] The dissent in Crews proposed transferring the appeal to "the appropriate District Court of Appeal," in that case the Third District. This would seem impossible, there being no legislation granting any court but this one power to review Chapter 440 orders. Contrast Maryland Cas. Co. v. Marshall, 106 So.2d 212 (Fla. 1st DCA 1958), which construed an uncertain statute in the light of Article V's territorial scheme, and transferred a workmen's compensation appeal to the Third District. Appellees suggested in argument that, if the statute here is void, the appropriate review forum is the Circuit Court of Dade County, which like the Third District has power to issue writs of certiorari. See Monroe Education Ass'n v. Clerk, etc., 299 So.2d 1, 3 (Fla. 1974).
[10] Under Chapter 440, the hearing normally is held in the county where the injury occurred, Section 440.25(3)(b), and that presumably is the place where the order is signed before its filing in the Workers' Compensation Division office in Tallahassee, Section 440.25(3)(c). But these arrangements may be changed by the parties and the Commissioner, and may certainly be changed by the legislature, to separate the place of hearing and order from the place of injury. The constitutionality of the arrangement recommended by the Supreme Court would not depend on the place of injury being the place of the order from which the appeal "arises".
[11] Concerning the territoriality of courts see generally Phillips v. State ex rel. Dorner, 75 Fla. 93, 77 So. 665 (1918) and Chapman v. Reddick, 41 Fla. 120, 25 So. 673 (1899) (circuit courts) and Palm Beach County v. Rose, 337 So.2d 985 (Fla. 4th DCA 1976) (district courts of appeal).